**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT H. STERNER, JR.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-2917** |
| | : | |
| **MCP HOLDINGS CORPORATION** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                              **July 3, 2025**

We today address our subject matter jurisdiction when a former employee from the Middle District of Pennsylvania sues a Delaware holding company which allegedly breached a contract regarding his stock options after claiming the employee breached post-employment obligations to the holding company's subsidiary. The Delaware holding company has no business activities other than owning subsidiaries. The holding company moves to dismiss arguing, among other issues, we lack subject matter jurisdiction because its Chief Financial Officer manages the holding company's rather limited day-to-day activities from Centre County, Pennsylvania in the Middle District of Pennsylvania (and thus no diversity jurisdiction). The holding company also argues the proper venue for this case is in the Middle District of Pennsylvania. The former employee disagrees. We ordered expedited jurisdictional discovery with leave to supplement the motion to dismiss arguments. Expedited discovery confirmed all the holding company's decisions are made by a Texas citizen. The adduced facts confirm diversity of citizenship (Pennsylvania employee versus a holding company which is not a Pennsylvania citizen) but no basis for venue here. We enjoy subject matter jurisdiction because the parties are diverse but transfer this case to the United States District Court for the Middle District of Pennsylvania where the employee lives and formerly worked.

## I.    Facts relating to subject matter jurisdiction and venue.

Hanover, Pennsylvania resident Robert H. Sterner worked for Mission Critical Partners, Inc., owned by Delaware corporation MCP Holdings Corporation.[1] MCP Holdings issued Mr. Sterner 102,089 stock options under an Incentive Stock Option Agreement in July 2018 as part of his employment compensation and subject to employment restrictions.[2] The Incentive Stock Option Agreement does not contain a venue provision but the Stock Restriction Agreement attached to the Incentive Agreement requires the parties to bring lawsuits related to the Restriction Agreement "in the federal or state courts in the districts which include the principal executive offices of the Company[.]"[3]

Mr. Sterner resigned from his job at Mission Critical in May 2023 to work for non-party Michael Baker International in an unpleaded and presently unknown (to us) location.[4]

Mission Critical then learned of certain alleged conduct by Mr. Sterner which it believed breached his post-employment obligations. One of Mission Critical's lawyers, Philadelphia attorney Kevin Passerini, emailed a letter to Mr. Sterner at his residence in Hanover, Pennsylvania on August 24, 2023 on behalf of Mission Critical and MCP Holdings.[5] Attorney Passerini advised Mr. Sterner MCP Holdings had terminated all of Mr. Sterner's fully vested stock options because Mr. Sterner had breached his post-employment non-competition obligations.[6] Attorney Passerini allegedly also sent the letter to Mr. Sterner's new employer, Michael Baker International, at an unknown address.[7]

Mr. Sterner responded by suing MCP Holdings for defamation and tortious interference based on the letter sent to his new employer and breach of contract based on the canceled stock options[8] He also demanded his stock options as wages under Pennsylvania's Wage Payment and Collection Law.[9] Mr. Sterner sued in this District, although he lives in the Middle District of

Pennsylvania, on the basis MCP Holdings is subject to our personal jurisdiction and Attorney Passerini wrote and sent the allegedly defamatory letter from his Philadelphia law office.[10] Mr. Sterner alleges we retain diversity jurisdiction because he is domiciled in Pennsylvania and MCP Holdings is a Delaware corporation with its principal place of business in Delaware.[11]

MCP Holdings disagrees. It moved to dismiss for lack of diversity jurisdiction and improper venue.[12] MCP Holdings argued its principal place of business is in Port Matilda in Centre County, Pennsylvania, which destroys diversity jurisdiction because Mr. Sterner is a citizen of Pennsylvania.[13] MCP Holdings further argued the venue provision in the Stock Restriction Agreement requires Mr. Sterner to bring his breach of contract claim in Centre County state court; the fact Attorney Passerini sent the allegedly defamatory letter from Philadelphia on behalf of his Middle District clients does not create venue here.[14] MCP Holdings referenced an earlier-filed Declaration from its Chief Financial Officer Patrick Duffy swearing both his residence and MCP Holdings's principal place of business are in Centre County.[15] Chief Financial Officer Duffy swore he is principally responsible for MCP Holdings's finances, valuations, tax filings, financial statement audits, and administration of the stock incentive plan.[16] He swore he handles all of the paperwork for the stock options (including those awarded to Mr. Sterner) along with the accompanying restrictive covenant agreement.[17] He also swore MCP Holdings's directors live in several states outside of Pennsylvania although its annual board meetings occur in Centre County, Pennsylvania every July.[18]

We ordered expedited jurisdictional and venue discovery and learned, as of July 3, 2024 (the day Mr. Sterner filed suit), MCP Holdings:

- has held two board meetings in Centre County, Pennsylvania but has held other board meetings in other states and/or remotely;

- does not own or lease real estate anywhere;

3

- has no employees, revenues, expenses, or payroll tax returns;

- has five directors and three officers who reside in six different states, and the only Pennsylvania resident, Mr. Duffy, is not a director;

- is structured such that the entire organization (MCP Holdings and its subsidiaries) "reports" to Chief Executive Officer Darrin Reilly, who resides in Texas;

- is not registered in Pennsylvania and never filed a Pennsylvania tax return;

- the stock option plan at the center of this case is administered by the Board of Directors, none of whom reside Pennsylvania; and,

- has self-reported its principal place of business as Port Matilda, Pennsylvania on at least one tax filing in its state of incorporation, Delaware.[19]

## II.    Analysis

We deny MCP Holdings's Motion to dismiss based on a lack of diversity jurisdiction and improper venue. Mr. Sterner has established MCP Holdings's principal place of business in not Pennsylvania, which allows us to exercise our subject matter jurisdiction. And the parties' jurisdictional discovery establishes the entire organization reports to Chief Executive Officer Reilly in Texas. While we agree with MCP Holdings as to our lack of proper venue, we decline to dismiss on this basis and instead transfer this case to a proper venue in the Middle District of Pennsylvania.

### A.    We enjoy diversity subject matter jurisdiction.

MCP Holdings argues we do not have subject matter jurisdiction because the parties are not diverse: Mr. Sterner is a Pennsylvania citizen and MCP Holdings is a citizen of its state of incorporation (Delaware) and the state of its principal place of business (Pennsylvania).[20] MCP Holdings claims its nerve center is in Pennsylvania because Chief Financial Officer Duffy manages MCP Holdings's financial operations, tax filings, and the administration of its Stock Incentive Plan

(including the paperwork and distribution of stock option awards forming the basis of Mr. Sterner's claims) from his hometown in Centre County.[21]

    Mr. Sterner counters MCP Holdings has no physical location, and its directors and officers are located throughout the country.[22] He argues under recent authority from our Chief Judge MCP Holdings's principal place of business is not in Pennsylvania; it is probably in Texas, where the Chief Executive Officer of MCP Holdings Darrin Reilly lives and makes decisions.[23] Mr. Sterner attaches Chief Financial Officer Duffy's testimony swearing "the entire organization [,]" including MCP Holdings, "reports to [Darrin Reilly]."[24]

    MCP Holdings counters the activities of its Chief Executive Officer Reilly are not dispositive because his work in Texas and elsewhere largely concerns MCP Holdings's subsidiary.[25] By contrast, Chief Financial Officer Duffy manages the activities central to the function of MCP Holdings from an office building in Port Matilda, Pennsylvania.[26] MCP Holdings offers a declaration by Chief Financial Officer Duffy and a Delaware tax filing signed by MCP Holdings's controller swearing its principal place of business is in Port Matilda, Pennsylvania.[27]

    On a motion to dismiss, "Plaintiff has the burden to prove that subject matter jurisdiction exists."[28] Mr. Sterner has met his burden. The Supreme Court instructed in *Hertz Corporation v. Friend* a company's principal place of business is "the place where [the] corporation's officers direct, control, and coordinate the corporation's activities[,]" otherwise known as the corporation's "nerve center."[29] "[I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings . . . ."[30] The nerve center test applies to holding companies which exist to own and control subsidiary companies and do not participate in day-to-day business activities.[31] "[C]ourts which have

considered this issue post-*Hertz* have found a holding company's nerve center is where officers set policy and oversee significant corporate decisions—not where day-to-day operations take place."[32]

But what if a corporation's officers control its business activities remotely? Chief Judge Goldberg recently studied this issue in *Gaete v. Arctic Glacier Premium Ice*.[33] He remarked the nerve center analysis "has become trickier given the advent of remote work."[34] Maria Gaete and her co-administrator of an estate sued Arctic Glacier Premium Ice for wrongful death; Arctic Glacier removed the case on diversity grounds.[35] Ms. Gaete argued improper removal on the basis a defendant cannot remove to federal court if it is a citizen of the state where the lawsuit was filed (Pennsylvania).[36] Ms. Gaete claimed Arctic Glacier's nerve center is in Pennsylvania because that's where it identifies its headquarters on social media; critical functions such as banking, depositing monies, human resources inquiries, and mail sorting occur in Pennsylvania; and Arctic Glacier's corporate filings list its principal place of business as Pennsylvania.[37] Chief Judge Goldberg disagreed, finding these connections to Pennsylvania insufficient to establish a corporation's nerve center.[38] He noted the difficulty of determining where Arctic Glacier's officers directed the company's activities from as the "entire management structure is decentralized and there appears to be no brick-and-mortar headquarters . . ."[39] The company had no state where "a plurality of officers are located" so Chief Judge Goldberg looked instead to "where the 'lion's share' of . . . the decision-making was made."[40] Relevant to this consideration was where the Chief Executive Officer worked and where company executives made significant corporate decisions.[41] Our Chief Judge determined the Chief Executive Officer controlled the company from North Carolina and concluded Arctic Glacier properly removed the case.[42]

We also look to *Aizen v. Am. Healthcare Administrative Services, Inc.*, where Judge Martinotti found two companies' principal places of business were in New Jersey because the chief executive officer controlled corporate activities from his New Jersey home,[43] and *Benchmark Investments, Inc. v. PAVmed Inc.*, where Judge Broderick found a company's principal place of business was in New York because the chief executive officer made corporate decisions from New York rather than the company's Georgia headquarters.[44]

MCP Holdings argues *Gaete* and *Aizen* are not compelling because both cases involved virtual organizations with no physical operations at all; by contrast, MCP Holdings has "an officer working in and from the headquarters and other officers dispersed and working remotely and traveling for work."[45] MCS Holdings's analysis is not convincing. For one thing, we do not read *Gaete* and *Aizen* as applicable only to completely virtual organizations. For another, the nature of the office building in Port Matilda, Pennsylvania used by MCP Holdings and/or its subsidiary is unclear. Chief Financial Officer Duffy swore he "attended the [annual board] meetings from an office building in Centre County, Pennsylvania (which is also used by from MCP Holdings Corporation's subsidiaries) and which houses a conference room at which Board of Directors meetings for the MCP Holdings Corporation were held when conducted in-person . . . ."[46] MCP Holdings argues the office building is "where MCP's primary operating subsidiary and principal asset is headquartered and based."[47] But all we can glean from Mr. Duffy's declaration and MCP Holdings's reply argument is the *subsidiary* of MCP Holdings might lease or rent space in Port Matilda, Pennsylvania. Mr. Duffy swore the *holding company*, by contrast, did ***not*** own, lease, rent, or occupy space as of July 2024.[48] And even if the office building in Port Matilda actually is the headquarters of both the subsidiary and MCP Holdings, MCP Holdings's argument still fails. As the Supreme Court directed in *Hertz*, a company's headquarters is not necessarily the same as

its principal place of business.[49] The fact MCP Holdings convened its annual board meetings in Pennsylvania is not conclusive unless the Port Matilda office building is also MCP Holdings's "actual center of direction, control, and coordination[.]"[50] We do not think it is.

MCP Holdings argues Judge Broderick's analysis in *Benchmark* is also unpersuasive because he identified the nerve center as the location where key executives engaged in corporate decision-making.[51] Applying this reasoning, MCP Holdings argues, Pennsylvania is the principal place of business because Chief Executive Officer Reilly's activities in Texas are related to MCP Holdings' *subsidiary*. Chief Financial Officer Duffy's activities in Pennsylvania ("preparation of financial reporting, budgets, and taxes and the administration of MCP's stock option plan") are related to the holding company. Chief Financial Officer Duffy's "management and daily operations" of MCP Holdings's finances and stock plan[52] are immaterial: "neither the word 'daily' nor the word 'management' appears anywhere in *Hertz*."[53]

We are more persuaded by Chief Financial Officer Duffy's sworn testimony the entire organization, including MCP Holdings, reports to Chief Executive Officer Reilly in Texas, and Mr. Reilly is Mr. Duffy's direct supervisor.[54] No one disputes this fact. So, regardless of what the Chief Financial Officer decides in Pennsylvania, he must "report" all of his activities to the Chief Executive Officer in Texas. We find Mr. Sterner has met his burden to show MCP Holdings's principal place of business is not in Pennsylvania and therefore the parties are diverse. We enjoy subject matter jurisdiction over this dispute.

### B.  Venue is improper in this District.

We must also consider venue. The burden shifts to MCP Holdings to show improper venue.[55] MCP Holdings argues Mr. Sterner must bring his stock option claims in Centre County state court because the unsigned Stock Restriction Agreement attached to the Incentive Stock

Option Agreement has a venue provision requiring the claim to be brought in the federal or state court encompassing MCP Holdings' principal executive offices.[56] Because (according to MCP Holdings) we do not have subject matter jurisdiction over this dispute and therefore cannot transfer the case, we must enforce the venue provision through the doctrine of *forum non conveniens*.[57] MCP Holdings also argues it does not have sufficient contacts in the Eastern District of Pennsylvania for venue to be proper; the fact MCP Holdings's lawyer sent a letter from Philadelphia does not count.[58]

Mr. Sterner's prolix response to the venue argument contains multiple parts. He argues Delaware law governs our interpretation of the venue clauses; this dispute involves three different agreements, all of which say something different about venue; even if the unsigned Stock Restriction Agreement controls, MCP Holdings's "principal executive offices" are not in Centre County because MCP Holdings does not have any offices; the venue provision in the unsigned Stock Restriction Agreement is not enforceable; none of Mr. Sterner's claims arise under the Stock Restriction Agreement; and venue is proper here because a lawyer sent the defamatory letter from Philadelphia; and MCP Holdings waived an argument under personal jurisdiction by failing to raise it before now.[59]

MCP Holdings counters MCP Holdings's principal executive offices, like its nerve center, are in Centre County, Pennsylvania, and Mr. Sterner misinterpreted its argument: MCP Holdings is not moving to dismiss for lack of personal jurisdiction.[60]

We need not spend much time deciding whether the venue provision in the Stock Restriction Agreement is enforceable. Our answer is the same whether we find the venue provision controls or whether we look to section 1391. Assuming the venue provision is enforceable, and further assuming MCP Holdings's "principal executive offices" are located in Centre County,

Pennsylvania, venue is proper in state or federal court in Centre County (which sits in the Middle District).[61]

An analysis under section 1391 yields the same result. Venue is proper under section 1391(b) in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" and "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"[62] An corporate defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ."[63] Where a state has more than one judicial district, a corporate defendant "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ."[64] "To determine whether [MCP Holdings] may be subject to personal jurisdiction in the Eastern District, [we] 'must conduct a personal jurisdiction analysis, treating [MCP Holdings] as a foreign corporation and the Eastern District of Pennsylvania as a state.'"[65] "Personal jurisdiction can be specific or general."[66] General jurisdiction exists if MCP Holdings "has 'continuous and systematic' contacts with the Eastern District so as 'to render [it] essentially at home in the forum state.'"[67] Specific jurisdiction exists if (1) MCP holdings purposefully directed its activities at the forum; (2) the litigation arises out of or relates to these activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice.[68]

Venue is not proper here under section 1391(b)(1) or (2). MCP Holdings's only connection with the Eastern District of Pennsylvania is the letter its lawyer sent from his Philadelphia office. This limited connection does not show MCP Holdings has continuous contacts allowing general jurisdiction; nor does it show MCP Holdings purposefully directed its activities here allowing

specific jurisdiction.[69] So, venue is improper under section 1391(b)(1). Venue is improper under section 1391(b)(2) for the same reason: one letter sent by MCP Holdings's Philadelphia lawyer does not suggest a substantial part of the events giving rise to Mr. Sterner's claims occurred in this District. The events leading to this lawsuit seemingly occurred entirely in the Middle District. The Middle District is where Mr. Sterner lives and (we assume) worked for Mission Critical at the Port Matilda office before the alleged breach of the Incentive Stock Option Agreement, and it is where Mr. Sterner received the allegedly defamatory letter from MCP Holdings's lawyer.[70]

### C. We transfer venue to the Middle District of Pennsylvania.

Our final inquiry concerns section 1406(a), which "comes into play where [as here] plaintiffs file suit in an improper forum."[71] "In those instances," we must "either . . . dismiss or transfer to a proper forum."[72] MCP Holdings urges us to dismiss the case.[73] We find the interests of justice would be better served by transferring it.[74]

Congress through section 1406 empowers us to transfer the case "to any district . . . in which it could have been brought."[75] Mr. Sterner could have brought this case in the Middle District of Pennsylvania as MCP Holdings would be subject to personal jurisdiction there given its ongoing business activities in Centre County and a substantial part of the events giving rise to Mr. Sterner's claims occurred in the Middle District. Mr. Sterner could also have sued in Texas because, as found above, the evidence to date suggests MCP Holdings's principal place of business is in Texas where its Chief Executive Officer makes all the decisions. But, on balance, the claims and facts in this case arise more directly from conduct in the Middle District of Pennsylvania subject to MCP Holdings presenting additional evidence demonstrating a basis to transfer to a Texas District to our colleagues in the Middle District of Pennsylvania.

III.    **Conclusion**

We deny MCP Holdings's Motion to dismiss based on lack of subject matter jurisdiction.

But we transfer to the Middle District of Pennsylvania finding we retain subject matter jurisdiction,

and the interests of justice are better served by transferring this case to a proper venue instead of

dismissing it for improper venue.

---

[1] ECF 21 ¶ 1; *see also* ECF 13-3 at 11 (Non-Disclosure Agreement). In addition to the Incentive Agreement, Mr. Sterner signed an Employment, Non-Disclosure & Confidentiality Agreement under which Mr. Sterner consented "to the personal jurisdiction and venue of the state and federal courts for the district encompassing MCP's principal place of business in Delaware for any lawsuit filed there against you by MCP arising from or related to this Agreement." ECF 13-3 at 16 (Non-Disclosure Agreement § 17). This venue provision is not relevant to our decision today because Mr. Sterner sued MCP Holdings rather than the other way around.

[2] ECF 21 ¶ 13, *see also* 21-1 (Incentive Stock Option Notice, Incentive Stock Option Agreement, & Exhibits).

[3] ECF 21-1 at 27–28 (Stock Restriction Agreement § 21).

[4] ECF 21 ¶ 2.

[5] ECF 13-3 at 2–10 (Aug. 24, 2023 Email & Letter).

[6] *See Id.*

[7] ECF 21 ¶ 23.

[8] *Id.* ¶¶ 42–65.

[9] *Id.* ¶¶ 66–70.

[10] *Id.* ¶ 10.

[11] *Id.* ¶¶ 4–6.

[12] ECF 24-2.

[13] *Id.* at 9–11.

[14] *Id.* at 11–14.

[15] ECF 9 ¶¶ 1, 4 (Sept. 26, 2024 Duffy Decl.).

[16] *Id.* ¶ 8.

[17] *Id.*

[18] *Id.* ¶¶ 9–10.

[19] *See generally* ECF 33 (June 27, 2025 Duffy Decl.); Duffy Dep.

[20] ECF 24-2 at 8–11.

[21] *Id.*

[22] ECF 31 at 1–2.

[23] *Id.* at 1–5. Mr. Sterner alleged Delaware is MCP Holdings's principal place of business in his most recent third amended Complaint. ECF 21 ¶ 5. MCP Holdings takes issue with Mr. Sterner now arguing MCP Holdings's principal place of business is in Florida or Texas. ECF 34 at 1. MCP Holdings argues Mr. Sterner "disregards well-settled law . . . confirming that a corporation can only have just one principal place of business." *Id.* We do not find it material Mr. Sterner changed his argument about MCP Holdings's principal place of business; we expect him to be candid to the Court after jurisdictional discovery. Nor do we interpret his brief on jurisdiction (ECF 31) as arguing MCP Holdings has two principal places of business.

[24] Duffy Dep. 19:15–20:1.

[25] ECF 34 at 2.

[26] *Id.* at 1–4.

[27] ECF 33 (June 27, 2025 Duffy Decl. & 2023 Tax Report).

[28] *Donn v. A.W. Chesterton Co.*, 842 F. Supp. 2d 803, 807 (E.D. Pa. 2012) (citing *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009)).

[29] 559 U.S. 77, 92–93 (2010).

[30] *Id.* at 93.

[31] *See, e.g.*, *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 353–56 (3d Cir. 2013).

[32] *Adams v. ABEO N. Am., Inc.*, No. 21-72, 2022 WL 893541, at *4 (M.D. Ga. Mar. 25, 2022) (collecting cases).

[33] No. 24-1396, 2025 WL 642092 (E.D. Pa. Feb. 27, 2025).

[34] *Id.* at *1.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at *3.

[39] *Id.*

[40] *Id.* at *4.

[41] *Id.*

[42] *Id.* at *4–*5.

[43] No. 18-15195, 2019 WL 4686811, at *5–*6 (D.N.J. Sept. 26, 2019).

[44] No. 20-10888, 2021 WL 5967918, at *3–*4 (S.D.N.Y. Dec. 16, 2021).

[45] ECF 34 at 1.

[46] ECF 33 ¶ 4 (June 27, 2025 Duffy Decl.).

[47] ECF 34 at 2–3.

[48] Duffy Dep. 9:24–10:11.

[49] *Hertz*, 559 U.S. at 93. We acknowledge the tax filing attached to Chief Financial Officer Duffy's Declaration self-identifying MCP Holdings's principal place of business as Port Matilda, Pennsylvania as its principal place of business but this is not persuasive. A corporation's thoughts on the location of its nerve center may well differ from a judge's required analysis. *See, e.g.*, *Gaete*, 2025 WL 642092, at *1, *3 (finding, despite Arctic Glacier's corporate filings listing Bala Cynwyd as its principal place of business, "the listing of an address alone is not sufficient to establish Pennsylvania as Defendant's nerve center.").

[50] *Hertz*, 559 U.S. at 93. Any argument by MCP Holdings concerning the two board meetings held in Pennsylvania is even less convincing given it held two other board meetings in Florida, two more in the District of Columbia, and the remaining five held remotely. While we acknowledge our Court of Appeals in *SmithKline Beecham* held "relatively short, quarterly board meetings may well be all that is required to direct and control [a holding] company's limited work[,]" we do not find this reference applies where, as here, board meetings are held in different locations. 724 F.3d 337, 354 (3d Cir. 2013).

[51] *Id.* at 2.

[52] ECF 24-2 at 10.

[53] *Adams*, 2022 WL 893541, at *4 (quoting *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 106 (4th Cir. 2011)).

[54] Duffy Dep. 17:17–21, 19:15–20:1. MCP Holdings sought to file this entire deposition under seal. We denied this request. We will address their line-by-line review and then require it file the exhibits in this District without further issues in this Court.

[55] *Emekekwue v. Agwuegbo*, No. 12-1503, 2012 WL 5386279, at *6 (M.D. Pa. Nov. 1, 2012) ("Unlike jurisdictional inquiries, when challenging venue, the defendant ordinarily bears the burden of showing improper venue." (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982))).

[56] ECF 24-2 at 11–3. MCP Holdings does not explain why the claims must be brought in Centre County state court rather than federal court given the venue provision apparently allows for either.

MCP Holdings acknowledges the Stock Restriction Agreement is unsigned, but it argues Mr. Sterner agreed to be bound by all provisions in the Incentive Stock Option Agreement, which includes the Stock Restriction Agreement attached to the Incentive Stock Option Agreement as Exhibit A.

[57] *Id.* at 12.

[58] *Id.* at 13–14. Given this part of the argument focuses on the letter, MCP Holdings seems to be arguing venue for the defamation and tortious interference claims also lies in a different venue, although it does not specify which claims it is talking about.

[59] ECF 31 at 6–12.

[60] ECF 34 at 4–5.

[61] ECF 21-1 at 27–28 (Stock Restriction Agreement § 21).

[62] 28 U.S.C. § 1391(b).

[63] *Id.* § 1391(c)(2).

[64] *Id.* 1391(d).

[65] *Eldridge v. Walmart Supercenter-Store #2561*, No. 24-5451, 2024 WL 5250084, at *3 (E.D. Pa. Dec. 30, 2024) (first quoting *The ICA Grp., LLC v. Taggart Glob., LLC*, No. 12-6156, 2013 WL

159936, at *1 (E.D. Pa. Jan. 15, 2013); then citing *Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 443 (E.D. Pa. 1999)).

[66] *Id.* (citing *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009)).

[67] *Id.* (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)).

[68] *Weiser L. Firm, P.C. v. Hartleib*, No. 23-1889, 2024 WL 5219737, at *3 (3d Cir. Dec. 26, 2024).

[69] *See id.* at *5 ("Where a plaintiff brings intentional tort claims, the *Calder* effects test applies, and the court may exercise personal jurisdiction over an out-of-state defendant if the plaintiff 'felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered' *and* the defendant 'expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.'").

[70] *See Wall v. Corona Cap., LLC*, 221 F. Supp. 3d 652, 657–58 (W.D. Pa. 2016) ("In determining proper venue for a contractual dispute, the primary factors to be considered are 'where the contract was to be negotiated or executed, where the contract was to be performed, and where the alleged breach occurred.'" (quoting *Whipstock Natural Gas Servs., LLC v. Trans Energy, Inc.*, No. 08–1084, 2008 WL 4287158 at *3 (W.D. Pa. Sept. 17, 2008))), *aff'd*, 756 F. App'x 188 (3d Cir. 2018), *as amended on denial of reh'g* (Dec. 28, 2018); *DaimlerChrysler Corp. v. Askinazi*, No. 99-5581, 2000 WL 822449, at *6 (E.D. Pa. June 26, 2000) ("In defamation cases . . . courts have repeatedly held that venue is proper in a district in which the allegedly defamatory statement was published, particularly if injury was suffered in the same district." (collecting cases)).

[71] *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (first citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995); then citing 17A MOORE'S FEDERAL PRACTICE § 111.02 (3d ed. 2006)), *as amended* (July 19, 2007), *as amended* (Nov. 23, 2007)).

[72] *Id.* (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465–66 (1962)).

[73] ECF 24-2 at 13–14.

[74] *See Zero Techs., LLC v. Clorox Co.*, 713 F. Supp. 3d 40, 58 (E.D. Pa. 2024) ("In general, it is preferable to transfer a case to an appropriate federal forum rather than dismiss it." (citing *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001))).

[75] 28 U.S.C. § 1406(a).