**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT STERNER,                     :    CIVIL ACTION NO. 1:25-CV-1212
                                    :
       Plaintiff               :    (Judge Neary)
                                    :
   v.                              :
                                    :
MCP HOLDINGS CORPORATION,           :
                                    :
       Defendant               :

**MEMORANDUM**

A motion to dismiss is an important legal tool which allows defendants to avoid litigation costs in cases where the plaintiff's complaint is plainly deficient. It is equally important that the motion be denied where there is *any* possibility that plaintiff has a plausible ground for relief. Plaintiff, Robert Sterner, raises claims of defamation, tortious interference, breach of contract, and violations of the Pennsylvania Wage Payment and Collection Law ("WPCL") against defendant, MCP Holdings Corporation ("MCP"), the parent company of Sterner's former employer Mission Critical Partners, LLC. MCP Holdings moves to dismiss Sterner's complaint. Here, the court finds Sterner's complaint raises plausible claims and so will deny MCP Holdings' motion (Doc. 43) in its entirety.

## I. Factual Background & Procedural History

Sterner was an employee of a subsidiary of defendant MCP. (Doc. 21 ¶ 12). In 2018, his employer offered him stock options under the Stock Incentive Plan in exchange for signing a non-disclosure and confidentiality agreement and a

restrictive covenant agreement. (Doc. 21-1). Sterner accepted the offer and received 102,089 stock options, the last of which vested on January 5, 2023. (Doc. 21 ¶ 3). He retained the right to exercise his stock options during an agreed upon period following the end of his employment. (Id. ¶ 19).

During his period of employment, Sterner was promoted to Senior Vice President of Business Development. (Doc. 21-2 at 2 n.1). Sterner voluntarily resigned his employment on May 17, 2023 and began working at Michael Baker International ("MBI") as the Vice President and National Director for DATAMARK. (Docs. 21 ¶¶ 17-18; 21-2 at 1). After Sterner started working for MBI, MCP sent Sterner a letter cancelling his stock options for reportedly violating his post-employment obligations contained within the restrictive covenant portion of his employment and stock option agreement. (Docs. 21-2; 21 ¶¶ 20-24). Sterner denies doing anything that would have been a violation of his duty of confidentiality to MCP. (Doc. 21 ¶¶ 24-26).

Two weeks later, Sterner and MBI both received a letter from MCP dated August 24, 2023 stating that MCP believed Sterner used confidential trade secret information and violated his non-compete agreement. (Doc. 21 ¶¶ 22-28). The purpose of this letter, according to Sterner, was to convince MBI to fire him. (Id. ¶ 36). Indeed, after receiving the letter from MCP, MBI terminated Sterner's employment. (Id. ¶ 37).

Sterner initiated this action in the Eastern District of Pennsylvania, and his complaint advances claims of defamation, tortious interference, breach of contract,

and violations of the WPCL. (Doc. 21). MCP filed a motion to dismiss for lack of jurisdiction. (Doc. 8). Sterner filed an amended complaint (Doc. 11), and MCP again moved to dismiss for lack of jurisdiction and failure to state a claim. (Doc. 13). Judge Surrick ordered that the motion to dismiss for lack of jurisdiction was moot and transferred the case to Judge Mark Kearney. (Docs. 16, 17). Sterner filed a second amended complaint (Doc. 19), but Judge Kearney again ordered Sterner to amend the complaint to address parties' citizenship. (Doc. 20). Sterner filed a third amended complaint on May 22, 2025. (Doc. 21). MCP again filed a motion to dismiss. (Doc. 24). Judge Kearney found that subject matter jurisdiction was proper, but venue in the Eastern District was improper. (Doc. 37). He denied MCP's motion to dismiss as to subject matter jurisdiction without prejudice and transferred the matter to the Middle District of Pennsylvania. (Doc. 38). MCP then filed a motion to dismiss with this court. (Doc. 43). The motion has been fully briefed (Docs. 46, 47, 50) and is ripe for disposition.

## II. <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. <u>See</u> FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (quoting <u>Pinker</u>

v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 129-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at

4

678. Threadbare legal conclusions disguised as factual allegations are not sufficient for a facially plausible claim. Id. at 679.

### III. Discussion

#### A. Defamation

Sterner claims MCP's letter to MBI stating he improperly revealed trade secret information and violated his noncompete agreement defamed him. To plead a claim for defamation under Pennsylvania law, Sterner must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the recipient's understanding of its defamatory meaning; (5) the recipient's understanding of intent for the communication to be applied to the plaintiff; (6) special harm to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. Kurowski v. Burroughs, 994 A.2d 611, 616 (Pa. Super. 2010); 42 Pa. C.S. § 8343(a).

As a threshold issue, this court finds that the August 24, 2025 letter can be considered at the motion to dismiss stage. Courts may "consider documents attached to or submitted with the complaint," Corman v. Nationwide Life Ins. Co., 396 F. Supp. 3d 530, 535–36 (E.D. Pa. 2019) (cleaned up), and Sterner attached the letter to his complaint as an exhibit.[1] The parties do not contest that the August 24 letter applied to Sterner, MBI received the letter, MBI understood the letter to apply to Sterner, or that Sterner was harmed due to MBI's receipt of the letter.

---

[1] The court does not consider the letter for the truth of the statements therein, but for the impact the statements may have had on MBI in assessing the letter's potential defamatory character.

5

What is at issue is whether the letter had a defamatory character and whether the letter was privileged.

A statement is defamatory if it harms a person's reputation in a way that "grievously fractured his standing in the community of respectable society." Tucker v. Phila. Daily News, 848 A.2d 113, 124 (Pa. 2004) (quoting Scott-Taylor, Inc. v. Stokes, 229 A.2d 733, 734 (Pa. 1967)). Drawing all reasonable inferences in Sterner's favor, the statements have a defamatory character towards him. The letter alleges he engaged in "direct violations of [his] post-employment non-competition obligations to the Company" and "used or disclosed or otherwise relied upon the Company's proprietary confidential and trade secret information to facilitate [his] competitive conduct . . . ." (Doc. 21-2 at ECF 1-2). Thus, the letter accuses Sterner of violating a contract and general untruthfulness which deterred MBI from continuing its business relationship with him. Furthermore, the statements are facts not opinions because the defamatory statements regard Sterner's conduct directly and thus go beyond MCP's impression or judgement of him. Balletta v. Spadoni, 47 A.3d 183, 197-98 (Pa. Cmwlth. 2012). MCP has not pointed to any independent source of evidence establishing the veracity of its statements in the letter. Because the complaint alleges MCP's statements were not factually true, an allegation the court must take as true for the purposes of a motion to dismiss, the complaint sufficiently alleges a defamation claim.

A defendant can avoid liability for a defamatory statement if it was subject to privilege and the privilege was not abused. Miketic v. Baron, 98, 675 A.2d 324, 327

6

(Pa. Super. 1996); <u>Ralston v. Garabedian</u>, 676 F. Supp. 3d 325, 340 (E.D. Pa. 2021). One such privilege, the judicial privilege, entitles a party to absolute immunity for communications issued in the regular course of a judicial proceeding. <u>Forbes v. King Shooters Supply</u>, 230 A.3d 1181, 1188 (Pa. Super. 2020). While protected communications may include statements made outside of court, such as preliminary correspondence by counsel, it only applies to preliminary communications when future litigation is "actually contemplated in good faith and under serious consideration." <u>Schanne v. Addis</u>, 121 A.3d 942, 950 (Pa. 2015) (cleaned up); <u>Ralston</u>, 676 F. Supp. at 340-41 (E.D. Pa. 2021). Merely mentioning the possibility of litigation is insufficient to shield a defendant from liability.

Here, MCP contends that the August 24 letter falls within the judicial privilege because it was sent by legal counsel and addressed concerns about Sterner's compliance with his contractual allegations. (Doc. 50 at 6-7). The letter further states that MCP wanted to "avoid litigation over these matters" and that Sterner should preserve documentation "should litigation become necessary." (Doc. 21-2 at EFC 2, 8). To date, MCP has not filed legal proceedings connected with the August 24 letter. Sterner alleges MCP did not intend or seriously contemplate legal proceedings and MCP knew the non-compete agreement was not enforceable under Delaware law. (Doc. 21 ¶ 38). Because the letter does not mention concrete plans for litigation and because Sterner alleges MCP did not intend to litigate the matter, the court must assume—at the pleading stage—that the subject letter was not made in serious contemplation of litigation and does not fall within the judicial privilege.

7

Accordingly, count 1 of the amended complaint states a plausible claim of defamation.

### B. Tortious Interference

Sterner claims MCP's letter to MBI intentionally and impermissibly interfered with his business relationship with MBI. To prove tortious interference, Sterner must show: (1) the existence of a contractual relationship between the plaintiff and a third party; (2) the defendant's intent to harm the plaintiff by interfering with the contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) harm to the plaintiff as a result of the defendant's actions. Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009), aff'd, 20 A.3d 468 (Pa. 2011); see also Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009). MCP Holdings argues Sterner's complaint fails to meet all but the first of these requirements. (Doc 44 at 11).

Under Pennsylvania law, the defendant's intent to cause harm and the defendant's privilege or justification to interfere are closely related. Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978). Courts are instructed to focus on whether the defendant's conduct is "sanctioned by the 'rules of the game' which society has adopted." Phillips v. Selig, 959 A.2d 420, 430 (Pa. Super. 2008) (citing Glenn v. Point Park Coll., 272 A.2d 895, 899 (Pa. 1971)). Factors to consider include: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interests of the other party with which the actor's conduct interfered;

(4) the interests sought to be advanced by the actor; (5) the social interests in protecting the freedom of action of the actor and the contractual interests of the other party; (6) the proximity or remoteness of the actor's conduct to the interference; and (7) the relationship between the parties. Empire Trucking Co. v. Reading Anthracite Coal Co., 71 A.3d 923, 934 (Pa. Super. 2013).

Sterner has sufficiently shown that MCP's actions were improper such that his claims survive a motion to dismiss. Sterner alleges "[MCP] sent the letter with the intent to cause [his] new employer to fire him," "[MCP] intended to cause [his] new employer to terminate [his] employment," and the limitations in the restrictive covenant are "so broad that a court would neither enforce the agreement nor blue-pencil it to make it enforceable." (Doc. 21 ¶¶ 36, 38, 54). Accepting Sterner's allegations as true, MCP's attempt to interfere with his new employment using a restrictive covenant it knew was unenforceable is sufficiently outside the rules of the game to be improper. See Brown & Brown, Inc. v. Cola, No. 10-3898, 2010 WL 5258067, at *7 (E.D. Pa. Dec. 22, 2010) (finding that defendant's attempt to enforce a restrictive covenant that it knew to be unenforceable and with intent to maliciously harm the new employment relationship was tortious interference).[2]

---

[2] While the Court may rule on the enforceability of a restrictive covenant at the motion to dismiss stage, it declines to do so here as the restrictive covenant agreement is not attached as an exhibit to the complaint and therefore cannot be reviewed at this stage. Furthermore, Sterner's pleading is more than a "threadbare legal conclusion" as it states a plausible reason why the restrictive covenant would be unenforceable. Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556).

MCP's argument that the letter was not tortious interference because Sterner has not stated a viable claim for defamation is not persuasive. In support of its argument, MCP relies on Tannous v. Cabrini University, 697 F. Supp.3d 350 (E.D. Pa. 2023), on reconsideration in part, 702 F. Supp. 3d 317 (E.D. Pa. 2023), for the contention that a claim for tortious interference predicated on alleged defamation must be dismissed if the plaintiff has not stated a viable claim for defamation. (Doc. 44 at 11) (citing Tannous, 697 F. Supp. at 365-66). MCP mischaracterizes the holding in Tannous. The Tannous court dismissed the tortious interference claim under the third element, absence of privilege or justification, because the speech was a matter of public concern and protected under the First Amendment. 697 F. Supp 3d. at 366-68. Unlike the speech in Tannous, the speech here has not yet been shown to be privileged. At the very least, MCP's letter cannot be classified as public speech shielded by the First Amendment. Furthermore, as stated above, Sterner has stated a viable claim for defamation. While MCP could later show that the restrictive covenant was enforceable and it was privileged to send the letter, this issue must be resolved in discovery. As such, MCP's motion as to Count 2 will be denied.

### C. Breach of Contract

Sterner next claims that MCP breached its contractual obligations under the Incentive Stock Option Agreement (Doc. 21-1) by taking back his vested options. MCP disputes it breached the contract, arguing that Sterner breached his post-

10

employment contractual obligations first. (Doc. 44 at 12-13). Both parties agree the contract is governed by Delaware law. (Docs. 44 at 12 n.1; 47 at 15).

As a threshold issue, MCP argues Sterner cannot bring breach of contract claim to this court because he did not follow the internal dispute procedure set out in the Incentive Stock Agreement. (Doc. 44 at 14-15). The dispute procedure states a party must first bring any dispute to the Administrator and no legal action can be filed until the party has exhausted its administrative remedies. (Id.; Doc. 21-1 at ECF 8-9). For the purposes of this case, the Administrator is simply the board of MCP or another committee appointed by the board. (Doc. 21-1 at ECF 11). Sterner responds that this arrangement, where one party has the unilateral power to appoint the arbiter of claims, is unenforceable. (Doc. 47 at 14-15).

A contract or portion of a contract is unenforceable if it is unconscionable. A contract clause is unconscionable if its terms are so one sided as to shock the conscience, such as when "the party with superior bargaining power uses it to take unfair advantage of [its] weaker counterpart." Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908, 912–13 (Del. 1989) (citing Tulowitzki v. Atlantic Richfield Co., 396 A.2d 956, 960 (Del. Super. Ct. 1978)); Chemours Co. v. DowDuPont Inc., No. CV 2019-0351-SG, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30, 2020), aff'd, 243 A.3d 441 (Del. 2020). If one party has unequal power over the selection of the arbitrators, the clause is likely unconscionable. Graham, 565 A.2d at 912–13; see also Nino v. Jewelry Exch., Inc., 609 F.3d 191, 204-05 (3d Cir. 2010).

11

The contract between Sterner and MCP designates "the Administrator" as the arbiter. (Doc. 21-1 at ¶ 20). The Administrator is defined as "the Board or the committee(s) or officer(s) appointed by the Board that have authority to administer the Plan." (Doc. 21-1 at EFC 10). The Board refers to "the Board of Directors of the Company." (Id. at EFC 11). This gives MCP complete control over any disputes regarding the contract. In a case interpreting the law of the Virgin Islands, the Third Circuit found an arbitration clause that gave the employer the option to strike two arbiters from a four-member panel while the employee could only strike one was so one sided as to be unconscionable. Nino, 606 F. 3d at 204-05. If the employer having twice as much control over the decision maker is unconscionable, the employer having complete control certainly is as well. As such, the dispute resolution section of the contract is unconscionable and thus unenforceable.

While the dispute resolution portion of the contract is unenforceable, it does not negate the contract in its entirety. "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Del. Code 6, § 2-302 (1966). Additionally, the contract here states if the court finds a portion of the contract unenforceable, the court should only excise that portion and leave the remainder of the contract intact. (Doc. 21-1 at ¶ 10). The parties are therefore not required to follow the internal dispute procedure set out in the contract before filing

a lawsuit, but the parties' obligations and consideration under the contract remain intact.

With Sterner's failure to follow the dispute resolution procedure excused, he can bring a claim for breach of contract by showing (1) a contractual obligation, (2) a breach of that obligation by the defendant, and (3) resulting damage to the plaintiff. In re G-I Holdings, Inc., 755 F.3d 195, 202 (3d Cir. 2014) (citing H–M Wexford LLC v. Encorp, Inc., 832 A.2d 129, 140 (Del. Ch. 2003)).

The Incentive Stock Option Agreement is a contract between Sterner and MCP. Under the contract, Sterner's options vested by August 11, 2023, and MCP was obligated to permit him to exercise those options unless Sterner had already breached his contractual obligations. (Doc. 21 ¶ 16). MCP did not permit him to exercise the options. (Id. ¶ 20-21). Sterner alleges he did not breach his contractual obligations by violating his non-compete agreement or sharing trade secrets, and he thus should have been able to exercise his stock options. (Doc. 21 ¶¶ 24, 25).[3] He sufficiently pleaded damages based on his inability to purchase those stocks. Sterner has therefore made a plausible claim for breach of contract, and MCP's motion as to Count 3 must be denied.

---

[3] At the motion to dismiss stage, the court "must accept as true all the factual allegations contained in the complaint." See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n. 1 (2002). Consideration of whether Sterner or MCP actually violated their contractual obligations must be left for discovery.

### D. Pennsylvania Wage Payment and Collections Law

Sterner contends MCP violated the WPCL by withholding his vested stock options. The WPCL states "every employer who . . . agrees to pay or provide fringe benefits or wage supplements, must remit the deductions or pay or provide the fringe benefits or wage supplements, as required . . . within 60 days of the date when proper claim was filed by the employe in situations where no required time for payment is specified. 43 Pa. C.S. § 260.3.

Only employers are required to pay wages. MCP is a holding company, and Sterner was an employee of a subsidiary of MCP, not MCP directly. Recovery under the WPCL is not limited to a plaintiff's immediate employer. Sommers v. UPMC, No. GD-12-012901, LEXIS 22397, at *18 (Pa. D. & C., 2015). Whether a parent company can be held responsible depends on the amount of control the parent company exercised over decisions affecting the employee's wages. Henderson v. Univ. of Pittsburgh Med. Ctr., No. GD09-013303, LEXIS 43, at *5-9 (Pa. D. & C., 2010). If the parent company's decisions resulted in an employee of a subsidiary not receiving wages that they should have been paid, the parent company can be held liable as the employee's "employer". Id. Sterner states MCP blocked him from exercising his stock options. (Doc. 1 ¶ 21). Because MCP made decisions that impacted Sterner's wages, MCP was an employer under the WPCL.

The WPCL defines "wages" as "all earnings of an employee" and explicitly includes "fringe benefits or wage supplements." 43 P.S. § 260.2a. The Third Circuit found that a stock option "falls within the definition of fringe benefits or wage

14

supplements because it represents an amount to be paid pursuant to an agreement to the employee." Scully v. US WATS, Inc., 238 F.3d 497, 517 (3d Cir. 2001) (citing Regier v. Rhone–Poulenc Rorer, Inc., No. Civ. A. 93–4821, 1995 WL 395948, at *4–7 (E.D. Pa. June 30, 1995) (cleaned up)); Toppy v. Passage Bio, Inc., 285 A.3d 672, 691 (Pa. Super. 2022). If the employer offered the stock option as employment compensation or as an incentive to maintain employment, this is further evidence that should be considered as part of the employee's wages. Toppy, 285 A.3d at 659-90; Scully, 238 F.3d at 517-18.

MCP's subsidiary offered the stock options to Sterner as part of his employment and to incentivize him to remain employed there. (Docs. 21 ¶¶ 13-14; 21-1). All the options vested by January 5, 2023, meaning Sterner earned the stocks by virtue of his employment even if they were not yet exercised by August 2023. (Doc. 23 ¶ 16). MCP made the decision to block him from exercising the options. (Doc. 21 ¶¶ 20-21). While the contract includes a clause that allows MCP to claw back even vested options if Sterner violated the noncompetition agreement, Sterner alleges that he did not do so. (Docs. 21-1 at ECF 3-4; 21 ¶¶ 26, 30, 32). At this stage of the litigation, Sterner has alleged a sufficient factual basis to show the stock options were wages and MCP acted as his employer in relation to the stock options. Sterner therefore states a claim under the WPCL, and MCP's motion as to Count 4 is denied.

## IV.   Conclusion

In the complaint, the plaintiff is only required to present "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Ashcroft</u>, 556 U.S. at 663. While the veracity of that statement must still be tested, courts should be loath to stop a plaintiff from presenting his case for relief if there is real possibility that further investigation may show he is so entitled. Sterner has shown such a possibility exists in this case. The Defendant's motion (Doc. 43) is therefore denied. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:   June 24, 2026

16